1
2
3
4
5

IN THE UNITED STATES DISTRICT COURT

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8

DANIEL KEEGAN and BETH KEEGAN,                    No. C 04-04470 SI

9

            Plaintiffs,                          **ORDER RESOLVING PLAINTIFFS'**
                                                 **MOTION FOR SUMMARY JUDGMENT**
   v.                                            **AND VACATING SEPTEMBER 12, 2005**

10

                                                 **TRIAL DATE**
IRENE S. KIVITZ,

11
12

            Defendant.
_____/

13
14

On July 29, 2005, this Court heard arguments on plaintiffs' motion for summary judgment.  Having

15

carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS plaintiffs'

16

motion for summary judgment with respect to the thirteenth cause of action (city nuisance), defendant's third

17

affirmative defense (statute of limitations), defendant's twentieth affirmative defense (consent), and defendant's

18

counter-claim for slander per se.  The Court DENIES plaintiffs' motion with respect to all other claims and

affirmative defenses.

19
20
21

**BACKGROUND**

22

In March, 2003, plaintiffs Dan and Elizabeth Keegan entered into a one-year lease-rental agreement

23

with Irene Kivitz, renting the residence at 2497 Pacific Avenue, San Francisco for $9000 per month.  The

24

Keegans paid the first month's rent ($9000) and a security deposit of $18,000.  They also paid $750 for a new

washer and dryer in the home.  The Keegans resided in the home for one month and one day.

25
26

This action arises out of a dispute between the Keegans, and Ms. Kivitz, as a result of alleged lead

27

contamination at the premises.  James Wavro acted as a dual agent who facilitated lease negotiations between

28

the parties.  Plaintiffs reviewed an unsigned copy of a lead-based paint disclosure form either before or at the

1    time they signed the lease-rental agreement on March 7, 2003. At that time, defendant declined to sign the

2    lead disclosure form. Before signing the lease, the parties agreed that plaintiffs would have the residence tested

3    for lead at their own expense and added the following handwritten statements to the disclosure form: 1) "Due

4    to Age of Property it is likely That lead paint exists under current paint" and 2) "Tenant will pay for lead paint

5    testing." See Def. Opp'n, Ex. B. When they signed the lease, plaintiffs initialed the statements at the bottom

6    of each page of the lease that stated that they had read the contents of each page. Page three of the lease

7    included the following statement in paragraph 27: "The following Addenda, if checked, have been made a part

8    of this Agreement before the parties execution: Addendum A: Lead-Based Paint Disclosure (Required by Law

9    for Rental Property Built Prior to 1978)." Id.   Defendant signed the lease on March 10, 2003. Id. The

10   parties dispute the following: whether plaintiffs signed the lead disclosure form on March 7, 2003; whether

11   defendant signed the lead disclosure form on March 10, 2003 when she signed the lease; and whether

12   defendant ever provided a copy of the signed disclosure form to Wavro.

13          Plaintiffs had the residence tested for lead. On March 28, 2003, the City and County of San Francisco

14   Department of Public Health sent defendant a "notice to abate" informing her that lead hazards were found on

15   the premises and that lead hazards were a public nuisance under the San Francisco Health Code that must be

16   abated by May 5, 2003. See Pls.' Mot., Ex. F.   The notice also contained the specific finding that the lead-

17   contaminated dust level on the patio was 4.3 times greater than acceptable legal limits and ordered defendant

18   to eliminate the hazards.[1]  Id.   The notice also referenced lead hazards in the home.[2]  Plaintiffs state that they

19   vacated the premises on or about April 11, 2003. According to defendant, the abatement process was

20   completed on or about July 17, 2003. It is unclear from the evidence presented by the parties whether plaintiffs

21

22          [1] Defendant objects to admission of evidence of the lead level test findings on the basis of a lack of
       foundation and that the entry calls for expert opinion. Parisot Decl. ¶17; Pls.' Mot., Ex. F. Defendant also
23     objects to the admission of the notice to abate on the basis that it lacks foundation and is hearsay. Pls. Mot.,
       Ex. F. The Court finds the evidence admissible pursuant to the public records and reports exception Federal
24     Rules of Evidence 803(8). Additionally, the document has been authenticated by city officials Joseph Walseth
       and Ihsan DuJaili. Pls.' Reply, Walseth Depo. ¶. 18-25, 38-40, 97-98 Ex. 1; DuJaili Depo., Ex. 2; see also
25     Def. Opp'n Ex. E, F, & H.

26          [2] While the notice to abate suggests that there was some lead contamination in the home, the parties
       did not provide substantive discussion or evidence related to contamination inside the home. The lead sample
27     included in the notice to abate and discussed by the parties describes lead-contaminated dust found on the
       outdoor patio. Therefore, for purposes of summary judgment, the Court will address lead hazards as they
28     relate to the results of the test conducted outside the home.

1    provided defendant with an opportunity to fix the hazard before vacating the residence or if defendant received

2    an extension on abating the hazard once plaintiffs vacated.

3        Plaintiffs filed a complaint in state court, including numerous state law claims and claims for violations

4    of 42 U.S.C. § 4852d.  Defendant removed to this court and filed a cross complaint.[3]  Plaintiffs seek return

5    of their $18,000 security deposit, a rebate of all rent paid – presumably $9000, $750 reimbursement for the

6    washer and dryer purchased by plaintiffs, attorneys' fees and cost of suit, and other consequential, punitive,

7    and special damages.  Defendant's cross-complaint seeks the remaining rent under the one year rental

8    agreement, presumably $99,000, and damages for slander per se because plaintiffs allegedly referred the

9    residence as a "toxic dump."  Each side seeks attorneys fees from the other.

10       Plaintiffs now seek summary judgment on the following causes of action: 1) violations of 42 U.S.C. §

11   4852d, 2) failure to disclose, 3) nuisance, 4) negligence per se, 5) breach of the warranty of habitability,  6)

12   failure to provide habitable housing, 7) plaintiffs' right to terminate lease due to untenantablity of premises, and

13   8) breach of contract.  Plaintiffs also seek summary adjudication on six of the twenty-two affirmative defenses

14   offered by defendant and on defendant's cross-complaint for slander per se.

15

16                                        **LEGAL STANDARD**

17       Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

18   on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

19   the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears

20   the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett,

21   477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which

22   the non-moving party will have the burden of proof at trial.  The moving party need only point out to the court

23   that there is an absence of evidence to support the non-moving party's case.  See id. at 325.

24       The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a

25   _____

26       [3] Plaintiffs' First Amended Complaint contains fifteen causes of action, the fifteenth of which is the
     federal claim for violation of 42 U.S.C. § 4852d.  Defendant's answer contains twenty-two affirmative
27   defenses.  Defendant's cross-complaint contains two causes of action; the answer to the cross-complaint
     contains twenty-four affirmative defenses (mis-numbered as twenty-five; the fourteenth affirmative defense must
28   have been overlooked).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  genuine issue for trial.'" <u>Id.</u> at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party

2  must "do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita</u>

3  <u>Electric Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla

4  of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-

5  moving party]."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

6          In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the

7  non-moving party, and all justifiable inferences are to be drawn in its favor.  <u>Id.</u> at 255.  "Credibility

8  determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

9  functions, not those of a judge [when she] is ruling on a motion for summary judgment."  <u>Id.</u>

10

11                                              **DISCUSSION**

12  **I.      42 U.S.C. § 4852d**

13          Plaintiffs argue that defendant violated the Residential Lead-Based Paint Hazard Reduction Act of 1992

14  by failing to provide a certified lead disclosure form signed by both parties before accepting their offer to rent.

15  42 U.S.C. § 4852d requires that all lessors and sellers disclose information concerning lead-based paint

16  hazards prior to the sale or lease of all residential dwellings built before 1978.  In this case, the standard lead

17  disclosure form was identified as part of the lease-rental agreement, and there is no genuine dispute that the

18  parties agreed that plaintiffs would pay for a lead-based paint hazard inspection after they moved in.  The

19  parties do dispute whether and, if so, when the official disclosure form was signed.

20          Under regulations that summarize § 4852d, the seller or lessor:

21          shall disclose to the purchaser or lessee the presence of any known lead-based paint and/or
            lead-based paint hazards; provide available records and reports; provide the purchaser or
22          lessee with a lead hazard information pamphlet; give purchasers a 10-day opportunity to
            conduct risk assessment or inspection; and attach specific disclosure and warning language to
23          the sale or leasing contract before the purchaser or lessee is obligated under a contract to
            purchase or lease target housing.  24 C.F.R § 35.80.[4]
24
25          Section 4852d(c) of the statute, which addresses the validity of contracts and liens under the

26  statute, states that:

27  _____

28          [4] For the purposes of this section, all sections cited refer to Title 24 of the Code of  Federal
    Regulations, unless otherwise noted.

Nothing in this section shall affect the validity or enforceability of any sale contract for the purchase and sale or lease of any interest in residential real property. . . nor shall anything in this section create a defect in title.

**A.** **Fifteenth cause of action - alleged violation of 42 U.S.C. § 4852d**

Few courts have considered 42 U.S.C. § 4852d, and the questions of what qualifies as a violation, what disclosure is required under the statute and what consequences flow from violation of the statute are questions of first impression in the Ninth Circuit. The most thoughtful and complete opinion on the subject to date is <u>Smith v. Caldwell Banker Real Estate Service</u>, 122 F. Supp 2d 267 (D. Conn. 2000). In that case, the court considered whether substantial compliance with the statute was adequate (finding that it was not), when the relevant disclosures must be made (finding that they must be made before the purchaser is obligated on the contract), what is meant by "knowing" violation (finding that the common understanding of "knowing" – acts done with awareness and not through ignorance, mistake or accident – applies), and whether the purchaser or tenant has the right to rescind if the seller or landlord fails to comply with the Act's requirements (finding no right to rescind).

In <u>Smith</u>, plaintiff purchasers were verbally advised that lead was present in the home and were provided with a copy of the EPA lead hazard handbook prior to signing the contract for sale. <u>Id</u>. at 271. However, plaintiffs did not receive a copy of a prior lead paint report until the closing and never signed the lead-based paint disclosure form. Plaintiffs sought damages and moved for summary judgment on the basis that defendants knowingly violated the disclosure requirements of 42 U.S.C. § 4852d. The signed contract in <u>Smith</u> also included a provision incorporating the lead disclosure form into the lease. Specifically, the provision stated that the parties agreed as a precondition to the validity of the agreement that each party received, signed, and annexed a lead disclosure and acknowledgment form as required by law. <u>Id</u>. at 272. The court held that the disclosure requirements must be executed prior to the signing of the contract but that failure to comply with the provisions of 42 U.S.C. § 4852d did not invalidate a contract.

The court found that the point of accepting a buyer's or lessees's offer is "the latest point at which full disclosure must occur." The court rejected the defendant/seller's argument that the contract was voidable if the parties failed to comply with any of the statute's lead paint disclosure requirements, because it would allow parties to easily avoid liability under the statute and ultimately lead to evasion of the disclosure requirements.

The court also held that substantial compliance was not a defense to the failure to properly execute the disclosure form.  In addition, the court determined the requirement that a party "knowingly" violate the statute did not require an evaluation of motivation or bad faith, but only that the accused party have knowledge that the law required that lead hazards be disclosed prior to execution of a contract.  Id. at 273

Here, defendant argues that summary judgment is inappropriate for three reasons.  First, defendant asserts that Smith does not apply because defendant Kivitz provided plaintiffs with an unexecuted copy of the disclosure form prior to the signing of the lease, unlike in Smith.  Def. Opp'n, p. 20.  However, this is simply a variant of the "substantial compliance" argument considered and rejected by the court in Smith.  This Court likewise rejects this argument.  Specifically, the Court finds that the plain language of 42 U.S.C. § 4852d requires that all disclosure documents be fully executed before the parties are bound by the lease, and that the failure to do so subjects the lessor and lessor's agent to potential liability.

This interpretation is supported by the plain language of the statute which requires that "before the purchaser or lessee is obligated under any contract . . . the lessor shall (B) disclose to the purchaser or lessee the presence of any known lead-based paint hazards . . ." 42 U.S.C. § 4852d.  24 C.F.R. § 35.88(b) states that "the seller or lessor shall complete the required disclosure activities prior to accepting the purchaser's or lessee's offer and allow the purchaser or lessee an opportunity to review the information and possibly amend the offer."  The requirements that the seller complete all disclosure activities "before" and "prior to" accepting any offer, and the policy goal behind the statute of disclosing all lead hazards prior to the signing the contract in order to allow plaintiffs to renegotiate the contract, suggest that execution of the disclosure form, not simply awareness of its contents, is required.

Second, defendant argues that the disclosure form was effectively executed when plaintiffs signed the lease which included an incorporation clause making the lead disclosure form part of the agreement.  Although plaintiffs signed the lease and initialed the incorporation clause, neither party has produced a disclosure form properly signed by both parties.  See Def. Opp'n, Ex. B.  Signing a lease incorporating an improperly executed disclosure form is not a substitute for signing the disclosure form as required by law.  As in Smith, the Court finds that providing an unsigned copy of the disclosure form is no more in compliance with the statute than providing verbal notice that lead-based paint may exist on the premises. 122 F. Supp 2d at 273.  The Court

1   holds that 42 U.S.C. § 4852d requires that all disclosure documents be fully executed prior to or at the time

2   a seller/lessor accepts an offer.

3        Finally, defendant argues that material facts in dispute about her level of knowledge that preclude

4   summary judgement.  Here the Court agrees.  The federal regulations set out the level of scienter required for

5   sanctions under 42 U.S.C. § 4852d.  Specifically, § 35.96 (a) states that any person who "knowingly fails to

6   comply with any provision of this subpart shall be subject to civil and monetary penalties . . ."  Therefore, a

7   person must "knowingly" fail to comply with the disclosure, evaluation and certification and/or acknowledgment

8   requirements in the statute in order to be subject to penalties.

9        Defendant presents evidence that she believed that the disclosure notice was executed by all of the

10  parties.  Kivitz Decl. at ¶ 7; Montalvo Decl. ¶ 1; Deposition Kivitz 239:9-12; 281:19-12, Ex. A.   First,

11  defendant states that she thought plaintiffs signed the lead disclosure form at the March 7, 2003 meeting.  Kivitz

12  Decl. ¶ 7; Montalvo Decl. ¶ 1;  Kivitz Depo. 239:9-12; 281:19-12, Ex. A.   Wavro testified that plaintiffs

13  initialed the disclosure form at the March 7, 2003 meeting, but when questioned more thoroughly by counsel

14  stated that he could not remember.  Montalvo Decl. ¶ 4; Wavro Depo. 47:21-49:16, Ex. D.  Second,

15  defendant asserts that she signed and dated the documents as instructed by Wavro and provided him with both

16  the lease and a signed disclosure form shortly after March 10, 2003.  Montalvo Decl. ¶ 1; Kivitz Depo. 63:10-

17  18; 239:9-12; 281:19-12; 282:1-25, Ex. A.  Defendant maintains that she believed she had executed all

18  required forms and that plaintiffs had received a copy of the signed disclosure form she provided to Wavro.

19  Id.  Wavro presents contradictory evidence that he never received a signed form from defendant. See Parisot

20  Decl. ¶ 12; Warvo Depo. 60:16-25; 61:1-25; 326:25; 327:12; 299:1-25; 300:1-25, Ex. E.

21       These factual disputes raise questions as to whether defendant knowingly violated the disclosure

22  requirements of 42 U.S.C. § 4852d that must be resolved at trial.  Therefore, the Court DENIES plaintiffs'

23  motion for summary judgment on the fifteenth cause of action for violations of 42 U.S.C. § 4852d.

24

25       **B.    Other causes of action related to the federal statute**

26            **1.    Eleventh cause of action**

27  Plaintiffs' eleventh cause of action is a claim of "failure to disclose."  In the complaint, plaintiffs do not

28

7

specify whether this is a statutory or common law claim and identify no source of the duty to disclose on which it is premised.  Since most of the argument in plaintiffs' motion for summary judgment on this cause of action focuses on defendant's failure to meet the disclosure requirements of 42 U.S.C. § 4852d, the Court will assume the eleventh cause of action relates to a violation of the federal statute.

Given that the Court has denied summary judgment on plaintiffs' cause of action for violations of  42 U.S.C. § 4852d, the Court DENIES plaintiffs' motion for summary judgment for the eleventh cause of action.

### 2.        Right to terminate the lease

Although plaintiffs' complaint does not contain a specific cause of action for the right to terminate a lease, plaintiffs request summary judgment on the issue.  Plaintiffs assert that due to defendant's violation of 42 U.S.C. § 4852d, the contract was invalid as a matter of law and that plaintiffs were relieved of their obligation to tender rent payments.  See Pls.' Mot. at 18.

The plain language of 42 U.S.C. § 4852d states that violations of the statute do not invalidate a contract.  Specifically, § 4852d(c) of the statute states that "nothing in this section shall affect the validity or enforceability of any . . . lease of any interest in residential real property . . ."  Additionally, the relevant Code of Federal Regulations support this interpretation of the statute.  See 24 C.F.R. §§ 35.88, 35.92.

Plaintiffs contend, in effect, that § 4852d(c) is logically inconsistent with the other portions of the statute and the regulations which require that the parties meet all disclosure requirements "before the purchaser or lessee is obligated under any contract to purchase or lease target housing . . ."  However, the structure of the statute suggests that the legislature chose to provide that violations of the statute would not invalidate contracts, but instead would  subject those who violate the statute to civil penalties.  This construction, which is consistent with the discussion in Smith, is the only way to give effect to all portions of the statutory language.[5]

---

[5]  There is an important difference between Smith and the present case.  In Smith, the buyers sought civil penalties against the seller, and presumably wanted to keep the house, while it was the seller who wished to invalidate the contract.  Id. at 271. In holding that violations of the statute did not invalidate a sales contract, the  Smith court noted  that the statute was designed to protect buyers, and it would be unfair to allow defendant/sellers to avoid sanctions simply by claiming that their own violation of the disclosure requirements invalidated all contractual obligations.  Id. at 272.  In this case, the unfairness may cut the other way. Nevertheless, the statue says what it says. Moreover, plaintiff tenants are not without other, independent legal remedies, as plaintiffs' dozen or so other causes of action in this case illustrate.

United States District Court

For the Northern District of California

1    The Court DENIES plaintiffs' motion for partial summary judgment on the issue of plaintiffs' right to

2    terminate the lease so far as their argument rests on violations of federal statue 42 U.S.C. § 4852d.

3

4    **II.    Violations of state and local laws regulating lead hazards**

5        Plaintiffs argue that they have established that a hazard existed on the premises in violation of San

6    Francisco ordinance and California state law.   Plaintiffs seek summary judgment on their causes of action for

7    nuisance, breach of the warranty of habitability, breach of contract for failure to provide habitable housing,

8    plaintiffs' right to terminate the lease due to untenantability of premises, and negligence per se.  These remaining

9    causes of action all hinge on whether plaintiffs can demonstrate that a lead hazard existed on the premises.

10       Plaintiffs argue that a lead hazard was established for purposes of both state and local law when a lead

11   test conducted by the City and County of San Francisco revealed that the property had lead-contaminated dust

12   in amounts 4.3 times greater than allowed under California Health and Safety Code § 17920.10 and San

13   Francisco Health Code § 581.  The parties dispute whether the  proper definition under state law is that of a

14   lead-contaminated dust or lead-based paint.  See Cal. Code Regs. § 35035; Cal. Health & Safety Code §

15   17920.10(c).  The Court finds that plaintiffs have established a lead hazard for purposes of municipal but not

16   state law.

17

18   **A.    California Health and Safety Code § 17920.10**

19   California Heath and Safety Code § 17920.10(a) defines lead hazards as:

20       Any building or portion thereof. . . or the premises on which it is located, is deemed
         to be in violation of this part as to any portion that contains lead hazards. For
21       purpose of this part, 'lead hazard' means deteriorated lead-based paint, lead-
         contaminated dust, lead contaminated soil, or disturbing lead-based paint without
22       containment, if one or more of these hazards are present in one or more locations in
         amounts that are equal to or exceed the amounts of lead established for these terms
23       in Chapter 8 (commencing with Section 35001) or Division 1 of the Title 17 of the
         California Code of Regulations or by this section and that are likely to endanger the
24       health of  the public or the occupants thereof as a result of their proximity to the
         public or the occupants thereof. (emphasis added)
25

26   Section 17920.10(c) adds that lead-based paint, but not lead-contaminated dust, must meet specific

27   requirements order to qualify as a hazard. Specifically, lead-based paint:

28

9

United States District Court

For the Northern District of California

shall be considered lead hazards as described in subdivision (a) <u>only if</u> the aggregate affected area is equal to or in excess of one of the following: 1) two square feet in any one interior room or space, 2) twenty square feet on exterior surfaces, 3) ten percent of the surfaced area on the interior or exterior type of component with a small surface area.

Section (d) states:

an area smaller than stated in subdivision (c) shall be considered a lead hazard if a person is found to have a blood lead level equal to or greater than 10 micrograms per deciliter.

The statute also states that the terms "lead-based paint," "lead-contaminated dust," and "lead-contaminated soil" are to be further interpreted and clarified by the definitions in Chapter 8 (commencing with Section 35001) of Division 1 of Title 17 of the California Code of Regulations. <u>See</u> Cal. Health & Safety Code § 17920.10.   17 C.C.R. § 35035 defines a lead dust hazard as: "dust that contains an amount of lead equal to . . . eight hundred micrograms per square foot (800 mg/ft$^2$) for exterior floor and exterior horizontal window surfaces."

The notice to abate, which contains the results of the dust wipe test conducted by the Department of Public Health at the property, demonstrates that the appropriate definition for this case is that of lead-contaminated dust defined in § 35035. <u>See</u> Pls.' Mot., Ex. F; Cal. Health & Safety Code § 17920.10; 17 C.C.R. § 35035.  The findings in the notice to abate are titled "Results of Dust Wipe Laboratory Analysis" and the notice specifically provides definitions for lead-contaminated dust. <u>Id</u>.  Therefore, the Court finds plaintiffs are correct that the definition of lead-contaminated dust in § 35035 applies in this case.[6]  Therefore, the lead-contaminated dust on the patio that was 4.3 times in excess of 800 mg/ft$^2$ is in violation of the standards set out in California Health and Safety Code §17920.10.[7] <u>Id</u>.

---

[6] If the definition of lead-based paint were to apply, plaintiffs have provided no evidence that the aggregate affected area meets the requirements of § 17920.10(c) or that blood lead levels equal to or greater than the amounts provided for in § 17920.10(d) were present.

[7] In support of the assertion that lead levels on the patio were 4.3 times the legal amount, plaintiff presents the notice to abate (Exhibit F), authentication of the notice, deposition testimony from Director of the Childhood Lead Prevention Program for the San Francisco Department of Health Joseph Walseth, and deposition testimony of Ihsan DuJali, Environmental Health Technician for the San Francisco Department of Health.  While defendant disputes that lead levels on the patio were 4.3 times the legal limit, defendant offers no evidence in support of this position.  Therefore, the court finds that lead-contaminated dust on the patio was present in amounts 4.3 times the legal limit.

However, California Health and Safety Code § 17920.10(a) has two requirements for lead levels to be defined as a lead hazard. First, lead-contaminated dust levels must exceed the amounts established by law. Second, plaintiffs must also prove that the presence of the lead-contaminated dust is "likely to endanger the health of the . . . occupants." See Cal. Health & Safety Code § 17920.10(a). These two requirements are created by the plain language of the statute, which provides that a lead hazard exists "if one or more of these hazards are present in amounts that are equal to or exceed the amounts of lead established [by statute or regulations] and that are likely to endanger the health of the public or the occupants thereof as a result of their proximity to the public or the occupants thereof." The legislature clearly meant to establish two separate requirements through the use of the word "and." See Cal. Health & Safety Code § 17920.10(c) (creating a limited exception to the likely to endanger the health of the public or occupants requirement for lead-based paint).

As plaintiff has not provided any specific evidence that plaintiffs' health was at risk from the presence of lead on the patio, the Court cannot find as a matter of law that lead-contaminated dust levels were likely to endanger plaintiffs' health. The lead hazard was in fact abated within a few weeks of notification. In addition, Joseph Walseth testified that if any health hazard had existed on the premises his department would have issued a notice to vacate rather than a notice to abate. Montalvo Decl ¶ 6; Walseth Depo. 64:2-8, Ex. F. This testimony supports defendant's assertion that plaintiffs' health was not in danger and raises a material dispute of fact that must be resolved at trial. Therefore, the Court DENIES summary judgment on all claims that rely upon violations of § 17920.10.

**B.      San Francisco Health Code § 581**

Section 581 of the San Francisco Health Code, which governs and defines public nuisances, defines a lead-contaminated dust hazard using the state standard for milligrams of lead per square foot surface area found in California Health and Safety Code § 17920.10 discussed above. Specifically, San Francisco Health Code § 1603 defines "dust-lead hazard" as it is defined in California Code of Regulations § 35035: "any surface dust that contains a mass per area concentration of lead equal to or exceeding 800 mg/ft$^2$ on exterior windowsill and other exterior surfaces." However, San Francisco Health Code § 581 does not include the

additional requirement contained in the California Health and Safety Code that lead levels must be likely to endanger the health of occupants. <u>See</u> Cal. Health & Safety Code § 17920.10(a). Therefore, the lead levels 4.3 times the legal limit that were present at the premises are a lead hazard and a prohibited public nuisance for purposes of San Francisco Health and Safety Code § 581(b)10. <u>See</u> Pls.' Mot., Ex. F. To this extent, plaintiffs' motion for summary judgment on the question of violation of San Francisco Health and Safety Code § 581(b) is GRANTED.

Where exactly this takes plaintiffs' case is unclear. Case law under San Francisco Health Code § 581 and California Health & Safety Code § 17920.10 is essentially nonexistent, so there is a lack of guiding precedent to determine whether a violation of a municipal public nuisance ordinance can be used to establish violation of state law. Generally, local legislation that conflicts with a provision of general state law is unconstitutional. Cal Const. Art. XI § 7. While a municipality may make additional regulations that supplement state law, this power is lost when the regulations conflict with state law or if the legislature has manifested a clear intent to wholly occupy a field. <u>See</u> <u>O'Connell v. City of Stockton</u>, 128 Cal. App. 4th 831 (2005) (holding that a city's general authority to regulate nuisances cannot be used as a tool to override the legislature in an area in which it has already manifested an intent to occupy); <u>Sherwin-Williams Co. v. City of Los Angeles</u>, 4 Cal. 4th 893, 897 (1993). In addition, the state has an established interest in the uniformity of building codes and has provided for a narrow set of circumstances under which local governments may seek variances. <u>See</u> Cal. Health & Safety Code §§ 17951, 17958.5, 17958.7, 17922 (addressing uniform  housing codes and regulations and citing legislative findings that the uniformity of building codes is a matter of statewide interest and concern); <u>Building Industry Assn. v. City of Livermore</u>, 52 Cal. App. 4th 719 (1996) (holding that the state legislature has clearly expressed an intent to fully occupy the field of building standards and has delineated the manner in which local authorities may adopt ordinances which vary from state codes).

In the present case, the regulations created in California Health & Safety Code § 17920.10 fall under state regulations of buildings used for human habitation and are therefore subject to an assumption of state preemption. Additionally, the content of the statute and the detail of the regulations may suggest that the state has manifested an intent to occupy the area of lead hazard regulation. Since the San Francisco lead hazard ordinance differs from state law in that it lacks the requirement that the parties' heath be endangered, the issue

12

of the effect and validity of a local ordinance that differs from state law deserves further elaboration and analysis.  See Cal. Health & Safety Code §§ 17922, 17958, 17958.5, 17958.7; 17920.10; San Francisco Health Code § 581.[8]

For the reasons stated above, the Court GRANTS summary judgment on the thirteenth cause of action for nuisance so far as it establishes a violation of San Francisco Health Code § 581.  However, the Court DENIES plaintiffs' motion for summary judgment for nuisance so far as it establishes violations of state law.  Given the parties' failure to touch on the issues discussed above, the Court will permit supplemental briefing on this issue upon request.

**IV.     Remaining Causes of Action**

Plaintiffs seek summary judgment for the following causes of action: breach of the warranty of habitability (fourth cause of action),[9] failure to provide habitable housing (no specific cause of action in complaint), negligence per se (fourteenth cause of action),[10] the right to terminate lease due to untenantablity of premises (no specific cause of action in complaint), and for breach of contract for failure to provide habitable housing (first cause of action).

---

[8]  Plaintiffs cite to Beck Development Co. v. Southern Pacific Transportation Co., 44 Cal. App. 4th 1160 (1996), a case whose complexity illustrates the problems that can be created by claims similar to those found here.  Plaintiffs apparently cite Beck Development for the proposition that a nuisance per se arises "when a legislative body with appropriate jurisdiction" declares something to be a nuisance. 44 Cal. App. 4th at 1206. Beck Development, which ultimately found that there was no legislative declaration of nuisance, does not address the question of which legislative body would have "appropriate jurisdiction" to make the declaration of nuisance, or how to analyze a situation involving either differing or conflicting legislative declarations of nuisance.

[9]  In order to succeed on the cause of action for violation of the warranty of habitability at trial, plaintiffs will need to demonstrate that defendant had actual or constructive notice of a lead hazard that would have been discovered by a reasonable inspection.  Plaintiffs must also address the issue of a landlord's reasonable opportunity to cure the defect, which should include whether Knight v. Hallsthammer, 29 Cal. 3d 46 (1981) applies to the present case.  Specifically, parties should address whether Knight, which held that a breach of the warranty of habitability exists even if a landlord does not have a reasonable time to repair, applies when a landlord has no specific prior notice of a defect.

[10]  In their motion for summary judgment for negligence per se, plaintiffs quote California Health & Safety Code § 17920.3 as stating: "Any building. . . is deemed to be in violation . . . as to any portion that contains lead hazards."  Plaintiffs have misstated the statute, which refers only to "any nuisance" and not specifically to "lead hazard" as asserted by plaintiffs.  See Pls.' Mot. at 15.

United States District Court
For the Northern District of California

In order to be successful on any of these causes of action, plaintiffs must first demonstrate that defendant violated California Health and Safety Code § 17920.10 or that violations of San Francisco Health Code § 581 are applicable to state causes of action. Given that the Court has denied plaintiffs' motion for summary judgment on violations of § 17920.10 and found plaintiffs have failed to demonstrate the legal relationship of violations of San Francisco municipal code to state law violations, the Court DENIES plaintiffs' motion for partial summary judgment for the claims listed above.

## V.   Affirmative defenses

### A.   Statute of limitations

Defendant has alleged "statute of limitations" as a defense. Plaintiffs filed this action in October of 2003, within the statute of limitations period. The Court GRANTS plaintiffs' motion for summary judgment on defendant's affirmative defense of violation of the statute of limitations.

### B.   Fifteenth, sixteenth and seventeenth affirmative defenses

In these affirmative defenses, defendant argues that she is not liable because plaintiffs illegally breached the lease agreement by vacating the property without providing proper notice and by failing to pay rent for the period of time expressly provided for in the lease agreement.[11] Plaintiffs argue that this defense is not valid because they were not required to provide notice or to pay defendant for the remainder of the contract because the lease was invalid due to violations of the implied warranty of habitability and/or 42 U.S.C. § 4852d.

The Court has denied summary judgment on plaintiffs' causes of action for implied warranty of habitability and 42 U.S.C. § 4852d. Therefore, it is unclear which party breached the contract and if plaintiffs' breach was justified. As a result, there are genuine issues of material fact in dispute. Therefore, the Court DENIES plaintiffs' motion for summary judgment on defendant's fifteenth, sixteenth, and seventeenth affirmative defenses.

---

[11] Throughout their papers both parties refer to the numbered affirmative defenses incorrectly. See Def.'s Answer. For affirmative defense sixteen, seventeen, and eighteen, the numbers assigned by the parties are one greater than the correct affirmative defenses as provided in the answer. What parties refer to as affirmative defenses twenty and twenty-one are eighteen and twenty, respectively, in the answer. Hereafter the court will refer to affirmative defenses by their correct numbers.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

**C.      Eighteenth affirmative defense**

Plaintiffs' first amended complaint alleged that defendant overcharged rent. Defendant's eighteenth affirmative defense asserts that plaintiffs violated a San Francisco Rent Ordinance by failing to provide proper notice and to pay rent for the period of time expressly provided for in the lease.  Plaintiffs argue that the defense is invalid because they were not required to provide notice or to pay defendant for the remainder of the contract because the lease was invalid due to violations of  42 U.S.C. § 4852d.  The Court has denied summary judgment on violations of 42 U.S.C. § 4852d.  Therefore, it remains unclear which party breached the contract and if plaintiffs' breach was justified.  As there are genuine issues of material fact in dispute, the Court DENIES plaintiffs' motion for summary judgment on defendant's eighteenth affirmative defense.

**D.      Twentieth affirmative defense**

Plaintiffs seek summary judgment on defendant's affirmative defense that plaintiffs consented to enter into a contract with defendant knowing that there was a possibility that lead was on the premises.  Consent is not a defense to violations of federal or state laws governing lead disclosure or tenable housing, and any agreement by a lessee to waive his or her right to tenable housing is void as contrary to public policy.  See Cal. Health & Safety Code  §17920; Cal. Civ. Code § 1942.1; 42 U.S.C. § 4852d.  Defendant may not avoid liability by arguing that plaintiffs' consented to live in premises that are deemed unsafe or hazardous as a matter of law.  Therefore, the Court GRANTS plaintiffs' motion for summary judgment on defendant's twentieth affirmative defense of consent.

**E.      Slander per se**

Plaintiffs move for summary judgment on defendant's counterclaim for slander per se.   Defendant alleged in her counter-claim that plaintiffs slandered her by falsely and publically accusing her of, among other things, knowingly and/or intentionally renting a toxic waste dump.  Parisot Decl. at ¶26.  Plaintiffs present evidence that the statements in question cannot be attributed to plaintiffs and deny that Caldwell ever used the term "toxic waste dump."  Parisot Decl. at ¶ 29.   Defendant presents no evidence or argument in opposition to this motion.  Therefore, the Court GRANTS plaintiffs' motion for summary judgment on defendant's

1    counter-claim of slander per se.

2

3    **VI.     Summary**

4            At the end of the hearing on July 29, 2005, defendant requested assignment to mediation. Plaintiffs'

5    counsel did not believe mediation would be productive and suggested that the costs of attorneys' fees were

6    likely to overtake the amount of damages at stake.  However, the procedural posture and complexity of

7    plaintiffs' pleading suggests that concerns over attorneys' fees will only be exacerbated as the case proceeds.

8    Given the relatively small amount of money at stake, a resolution obtained without further litigation is in the best

9    interest of both parties.  This Court will refer the parties to court-sponsored mediation, to occur within the next

10   30 days.  The current September 12, 2005 trial date is VACATED and will be re-set promptly as necessary.

11           Should the parties be unable to resolve the dispute voluntarily, it will be necessary to determine more

12   clearly what claims plaintiffs are bringing and what the relationship between the city and state regulations should

13   properly be.  This will require further briefing on these questions of first impression.

14

15                                          **CONCLUSION**

16           For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion

17   for summary judgement with respect to plaintiffs' thirteenth cause of action (city nuisance), defendant's third

18   affirmative defense (statute of limitations), defendant's twentieth affirmative defense (consent), and defendant's

19   counter-claim for slander per se.  The Court  DENIES plaintiffs' motion with respect to all other claims and

20   affirmative defenses.[12]  Finally, the Court orders the parties to court-sponsored mediation and VACATES the

21   September 12, 2005 trial date.

22

23           **IT IS SO ORDERED.**

24

25   Dated: August 22, 2005

26

27   _____

28           [12] However, the Court's denial of summary judgment on plaintiffs' nuisance claim based on state law
     is subject to reconsideration if the parties submit supplemental briefing as previously discussed.

                                          16

*United States District Court*
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

SUSAN ILLSTON
United States District Judge

**United States District Court**

For the Northern District of California

1

2

3

4

5            IN THE UNITED STATES DISTRICT COURT

6         FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  DANIEL KEEGAN and BETH KEEGAN,     No. C 04-04470 SI

9          Plaintiffs,      **ORDER RESOLVING PLAINTIFFS'**
**MOTION FOR SUMMARY JUDGMENT**

10   v.                   **AND VACATING SEPTEMBER 12, 2005**
**TRIAL DATE**

11  IRENE S. KIVITZ,

12          Defendant.
_____/

13

14      On July 29, 2005, this Court heard arguments on plaintiffs' motion for summary judgment.  Having

15  carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS plaintiffs'

16  motion for summary judgment with respect to the thirteenth cause of action (city nuisance), defendant's third

17  affirmative defense (statute of limitations), defendant's twentieth affirmative defense (consent), and defendant's

18  counter-claim for slander per se.  The Court DENIES plaintiffs' motion with respect to all other claims and

    affirmative defenses.

19

20

21                   **BACKGROUND**

22      In March, 2003, plaintiffs Dan and Elizabeth Keegan entered into a one-year lease-rental agreement

23  with Irene Kivitz, renting the residence at 2497 Pacific Avenue, San Francisco for $9000 per month.  The

24  Keegans paid the first month's rent ($9000) and a security deposit of $18,000.  They also paid $750 for a new

    washer and dryer in the home.  The Keegans resided in the home for one month and one day.

25

26      This action arises out of a dispute between the Keegans, and Ms. Kivitz, as a result of alleged lead

27  contamination at the premises.  James Wavro acted as a dual agent who facilitated lease negotiations between

28  the parties.  Plaintiffs reviewed an unsigned copy of a lead-based paint disclosure form either before or at the

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  time they signed the lease-rental agreement on March 7, 2003. At that time, defendant declined to sign the

2  lead disclosure form. Before signing the lease, the parties agreed that plaintiffs would have the residence tested

3  for lead at their own expense and added the following handwritten statements to the disclosure form: 1) "Due

4  to Age of Property it is likely That lead paint exists under current paint" and 2) "Tenant will pay for lead paint

5  testing." See Def. Opp'n, Ex. B. When they signed the lease, plaintiffs initialed the statements at the bottom

6  of each page of the lease that stated that they had read the contents of each page. Page three of the lease

7  included the following statement in paragraph 27: "The following Addenda, if checked, have been made a part

8  of this Agreement before the parties execution: Addendum A: Lead-Based Paint Disclosure (Required by Law

9  for Rental Property Built Prior to 1978)." Id.   Defendant signed the lease on March 10, 2003. Id.   The

10 parties dispute the following: whether plaintiffs signed the lead disclosure form on March 7, 2003; whether

11 defendant signed the lead disclosure form on March 10, 2003 when she signed the lease; and whether

12 defendant ever provided a copy of the signed disclosure form to Wavro.

13       Plaintiffs had the residence tested for lead. On March 28, 2003, the City and County of San Francisco

14 Department of Public Health sent defendant a "notice to abate" informing her that lead hazards were found on

15 the premises and that lead hazards were a public nuisance under the San Francisco Health Code that must be

16 abated by May 5, 2003. See Pls.' Mot., Ex. F.   The notice also contained the specific finding that the lead-

17 contaminated dust level on the patio was 4.3 times greater than acceptable legal limits and ordered defendant

18 to eliminate the hazards.[1]  Id.   The notice also referenced lead hazards in the home.[2]  Plaintiffs state that they

19 vacated the premises on or about April 11, 2003. According to defendant, the abatement process was

20 completed on or about July 17, 2003. It is unclear from the evidence presented by the parties whether plaintiffs

21

22       [1] Defendant objects to admission of evidence of the lead level test findings on the basis of a lack of
23 foundation and that the entry calls for expert opinion. Parisot Decl. ¶17; Pls.' Mot., Ex. F. Defendant also
   objects to the admission of the notice to abate on the basis that it lacks foundation and is hearsay. Pls. Mot.,
   Ex. F. The Court finds the evidence admissible pursuant to the public records and reports exception Federal
24 Rules of Evidence 803(8). Additionally, the document has been authenticated by city officials Joseph Walseth
   and Ihsan DuJaili. Pls.' Reply, Walseth Depo. ¶. 18-25, 38-40, 97-98 Ex. 1; DuJaili Depo., Ex. 2; see also
25 Def. Opp'n Ex. E, F, & H.

26       [2] While the notice to abate suggests that there was some lead contamination in the home, the parties
27 did not provide substantive discussion or evidence related to contamination inside the home. The lead sample
   included in the notice to abate and discussed by the parties describes lead-contaminated dust found on the
   outdoor patio. Therefore, for purposes of summary judgment, the Court will address lead hazards as they
28 relate to the results of the test conducted outside the home.

United States District Court

For the Northern District of California

1    provided defendant with an opportunity to fix the hazard before vacating the residence or if defendant received

2    an extension on abating the hazard once plaintiffs vacated.

3         Plaintiffs filed a complaint in state court, including numerous state law claims and claims for violations

4    of 42 U.S.C. § 4852d.  Defendant removed to this court and filed a cross complaint.[3]  Plaintiffs seek return

5    of their $18,000 security deposit, a rebate of all rent paid – presumably $9000, $750 reimbursement for the

6    washer and dryer purchased by plaintiffs, attorneys' fees and cost of suit, and other consequential, punitive,

7    and special damages.  Defendant's cross-complaint seeks the remaining rent under the one year rental

8    agreement, presumably $99,000, and damages for slander per se because plaintiffs allegedly referred the

9    residence as a "toxic dump."  Each side seeks attorneys fees from the other.

10        Plaintiffs now seek summary judgment on the following causes of action: 1) violations of 42 U.S.C. §

11   4852d, 2) failure to disclose, 3) nuisance, 4) negligence per se, 5) breach of the warranty of habitability,  6)

12   failure to provide habitable housing, 7) plaintiffs' right to terminate lease due to untenantablity of premises, and

13   8) breach of contract.  Plaintiffs also seek summary adjudication on six of the twenty-two affirmative defenses

14   offered by defendant and on defendant's cross-complaint for slander per se.

15

16                                    **LEGAL STANDARD**

17        Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

18   on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

19   the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears

20   the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett,

21   477 U.S. 317, 323 (1986).  The moving party, however, has no burden to negate or disprove matters on which

22   the non-moving party will have the burden of proof at trial.  The moving party need only point out to the court

23   that there is an absence of evidence to support the non-moving party's case.  See id. at 325.

24        The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a

25

26        [3] Plaintiffs' First Amended Complaint contains fifteen causes of action, the fifteenth of which is the
     federal claim for violation of 42 U.S.C. § 4852d.  Defendant's answer contains twenty-two affirmative
27   defenses.  Defendant's cross-complaint contains two causes of action; the answer to the cross-complaint
     contains twenty-four affirmative defenses (mis-numbered as twenty-five; the fourteenth affirmative defense must
28   have been overlooked).

                                         3

genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party

must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita

Electric Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla

of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-

moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

        In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the

non-moving party, and all justifiable inferences are to be drawn in its favor.   Id. at 255.   "Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge [when she] is ruling on a motion for summary judgment."  Id.

## DISCUSSION

### I.        42 U.S.C. § 4852d

        Plaintiffs argue that defendant violated the Residential Lead-Based Paint Hazard Reduction Act of 1992

by failing to provide a certified lead disclosure form signed by both parties before accepting their offer to rent.

42 U.S.C. § 4852d requires that all lessors and sellers disclose information concerning lead-based paint

hazards prior to the sale or lease of all residential dwellings built before 1978.  In this case, the standard lead

disclosure form was identified as part of the lease-rental agreement, and there is no genuine dispute that the

parties agreed that plaintiffs would pay for a lead-based paint hazard inspection after they moved in.  The

parties do dispute whether and, if so, when the official disclosure form was signed.

        Under regulations that summarize § 4852d, the seller or lessor:

> shall disclose to the purchaser or lessee the presence of any known lead-based paint and/or
> lead-based paint hazards; provide available records and reports; provide the purchaser or
> lessee with a lead hazard information pamphlet; give purchasers a 10-day opportunity to
> conduct risk assessment or inspection; and attach specific disclosure and warning language to
> the sale or leasing contract before the purchaser or lessee is obligated under a contract to
> purchase or lease target housing.  24 C.F.R § 35.80.[4]

        Section 4852d(c) of the statute, which addresses the validity of contracts and liens under the

statute, states that:

---

        [4] For the purposes of this section, all sections cited refer to Title 24 of the Code of  Federal
Regulations, unless otherwise noted.

4

United States District Court
For the Northern District of California

Nothing in this section shall affect the validity or enforceability of any sale contract for the purchase and sale or lease of any interest in residential real property. . . nor shall anything in this section create a defect in title.

A.      **Fifteenth cause of action - alleged violation of 42 U.S.C.  § 4852d**

Few courts have considered 42 U.S.C. § 4852d, and the questions of what qualifies as a violation, what disclosure is required under the statute and what consequences flow from violation of the statute  are questions of first impression in the Ninth Circuit.  The most thoughtful and complete opinion on the subject to date is <u>Smith v. Caldwell Banker Real Estate Service</u>, 122 F. Supp 2d 267 (D. Conn. 2000).  In that case, the court considered whether substantial compliance with the statute was adequate (finding that it was not), when the relevant disclosures must be made (finding that they must be made before the purchaser is obligated on the contract), what is meant by "knowing" violation (finding that the common understanding of "knowing" – acts done with awareness and not through ignorance, mistake or accident – applies), and whether the purchaser or tenant has the right to rescind if the seller or landlord fails to comply with the Act's requirements (finding no right to rescind).

In <u>Smith</u>, plaintiff purchasers were verbally advised that lead was present in the home and were provided with a copy of the EPA lead hazard handbook prior to signing the contract for sale.  <u>Id</u>. at 271.  However, plaintiffs did not receive a copy of a prior lead paint report until the closing and never signed the lead-based paint disclosure form.  Plaintiffs sought damages and moved for summary judgment on the basis that defendants knowingly violated the disclosure requirements of 42 U.S.C. § 4852d.  The signed contract in <u>Smith</u> also included a provision incorporating the lead disclosure form into the lease.  Specifically, the provision stated that the parties agreed as a precondition to the validity of the agreement that each party received, signed, and annexed a lead disclosure and acknowledgment form as required by law.  <u>Id.</u> at 272.  The court held that the disclosure requirements must be executed prior to the signing of the contract but that failure to comply with the provisions of 42 U.S.C. § 4852d did not invalidate a contract.

The court found that the point of accepting a buyer's or lessees's offer is "the latest point at which full disclosure must occur."  The court rejected the defendant/seller's argument that the contract was voidable if the parties failed to comply with any of the statute's lead paint disclosure requirements, because it would allow parties to easily avoid liability under the statute and ultimately lead to evasion of the  disclosure requirements.

5

The court also held that substantial compliance was not a defense to the failure to properly execute the disclosure form. In addition, the court determined the requirement that a party "knowingly" violate the statute did not require an evaluation of motivation or bad faith, but only that the accused party have knowledge that the law required that lead hazards be disclosed prior to execution of a contract. Id. at 273

Here, defendant argues that summary judgment is inappropriate for three reasons. First, defendant asserts that Smith does not apply because defendant Kivitz provided plaintiffs with an unexecuted copy of the disclosure form prior to the signing of the lease, unlike in Smith. Def. Opp'n, p. 20. However, this is simply a variant of the "substantial compliance" argument considered and rejected by the court in Smith. This Court likewise rejects this argument. Specifically, the Court finds that the plain language of 42 U.S.C. § 4852d requires that all disclosure documents be fully executed before the parties are bound by the lease, and that the failure to do so subjects the lessor and lessor's agent to potential liability.

This interpretation is supported by the plain language of the statute which requires that "before the purchaser or lessee is obligated under any contract . . . the lessor shall (B) disclose to the purchaser or lessee the presence of any known lead-based paint hazards . . ." 42 U.S.C. § 4852d. 24 C.F.R. § 35.88(b) states that "the seller or lessor shall complete the required disclosure activities prior to accepting the purchaser's or lessee's offer and allow the purchaser or lessee an opportunity to review the information and possibly amend the offer." The requirements that the seller complete all disclosure activities "before" and "prior to" accepting any offer, and the policy goal behind the statute of disclosing all lead hazards prior to the signing the contract in order to allow plaintiffs to renegotiate the contract, suggest that execution of the disclosure form, not simply awareness of its contents, is required.

Second, defendant argues that the disclosure form was effectively executed when plaintiffs signed the lease which included an incorporation clause making the lead disclosure form part of the agreement. Although plaintiffs signed the lease and initialed the incorporation clause, neither party has produced a disclosure form properly signed by both parties. See Def. Opp'n, Ex. B. Signing a lease incorporating an improperly executed disclosure form is not a substitute for signing the disclosure form as required by law. As in Smith, the Court finds that providing an unsigned copy of the disclosure form is no more in compliance with the statute than providing verbal notice that lead-based paint may exist on the premises. 122 F. Supp 2d at 273. The Court

United States District Court
For the Northern District of California

6

United States District Court

For the Northern District of California

1  holds that 42 U.S.C. § 4852d requires that all disclosure documents be fully executed prior to or at the time

2  a seller/lessor accepts an offer.

3      Finally, defendant argues that material facts in dispute about her level of knowledge that preclude

4  summary judgement.  Here the Court agrees.  The federal regulations set out the level of scienter required for

5  sanctions under 42 U.S.C. § 4852d.  Specifically, § 35.96 (a) states that any person who "knowingly fails to

6  comply with any provision of this subpart shall be subject to civil and monetary penalties . . ."  Therefore, a

7  person must "knowingly" fail to comply with the disclosure, evaluation and certification and/or acknowledgment

8  requirements in the statute in order to be subject to penalties.

9      Defendant presents evidence that she believed that the disclosure notice was executed by all of the

10  parties.  Kivitz Decl. at ¶ 7; Montalvo Decl. ¶ 1; Deposition Kivitz 239:9-12; 281:19-12, Ex. A.   First,

11  defendant states that she thought plaintiffs signed the lead disclosure form at the March 7, 2003 meeting.  Kivitz

12  Decl. ¶ 7; Montalvo Decl. ¶ 1;  Kivitz Depo. 239:9-12; 281:19-12, Ex. A.  Wavro testified that plaintiffs

13  initialed the disclosure form at the March 7, 2003 meeting, but when questioned more thoroughly by counsel

14  stated that he could not remember.  Montalvo Decl. ¶ 4; Wavro Depo. 47:21-49:16, Ex. D.  Second,

15  defendant asserts that she signed and dated the documents as instructed by Wavro and provided him with both

16  the lease and a signed disclosure form shortly after March 10, 2003.  Montalvo Decl. ¶ 1; Kivitz Depo. 63:10-

17  18; 239:9-12; 281:19-12; 282:1-25, Ex. A.  Defendant maintains that she believed she had executed all

18  required forms and that plaintiffs had received a copy of the signed disclosure form she provided to Wavro.

19  Id.  Wavro presents contradictory evidence that he never received a signed form from defendant. See Parisot

20  Decl. ¶ 12; Warvo Depo. 60:16-25; 61:1-25; 326:25; 327:12; 299:1-25; 300:1-25, Ex. E.

21      These factual disputes raise questions as to whether defendant knowingly violated the disclosure

22  requirements of 42 U.S.C. § 4852d that must be resolved at trial.  Therefore, the Court DENIES plaintiffs'

23  motion for summary judgment on the fifteenth cause of action for violations of 42 U.S.C. § 4852d.

24

25      **B.**      **Other causes of action related to the federal statute**

26          **1.**      **Eleventh cause of action**

27  Plaintiffs' eleventh cause of action is a claim of "failure to disclose."  In the complaint, plaintiffs do not

28

7

specify whether this is a statutory or common law claim and identify no source of the duty to disclose on which it is premised. Since most of the argument in plaintiffs' motion for summary judgment on this cause of action focuses on defendant's failure to meet the disclosure requirements of 42 U.S.C. § 4852d, the Court will assume the eleventh cause of action relates to a violation of the federal statute.

Given that the Court has denied summary judgment on plaintiffs' cause of action for violations of 42 U.S.C. § 4852d, the Court DENIES plaintiffs' motion for summary judgment for the eleventh cause of action.

### 2.    Right to terminate the lease

Although plaintiffs' complaint does not contain a specific cause of action for the right to terminate a lease, plaintiffs request summary judgment on the issue. Plaintiffs assert that due to defendant's violation of 42 U.S.C. § 4852d, the contract was invalid as a matter of law and that plaintiffs were relieved of their obligation to tender rent payments. See Pls.' Mot. at 18.

The plain language of 42 U.S.C. § 4852d states that violations of the statute do not invalidate a contract. Specifically, § 4852d(c) of the statute states that "nothing in this section shall affect the validity or enforceability of any . . . lease of any interest in residential real property . . ." Additionally, the relevant Code of Federal Regulations support this interpretation of the statute. See 24 C.F.R. §§ 35.88, 35.92.

Plaintiffs contend, in effect, that § 4852d(c) is logically inconsistent with the other portions of the statute and the regulations which require that the parties meet all disclosure requirements "before the purchaser or lessee is obligated under any contract to purchase or lease target housing . . ." However, the structure of the statute suggests that the legislature chose to provide that violations of the statute would not invalidate contracts, but instead would subject those who violate the statute to civil penalties. This construction, which is consistent with the discussion in Smith, is the only way to give effect to all portions of the statutory language.[5]

---

[5] There is an important difference between Smith and the present case. In Smith, the buyers sought civil penalties against the seller, and presumably wanted to keep the house, while it was the seller who wished to invalidate the contract. Id. at 271. In holding that violations of the statute did not invalidate a sales contract, the Smith court noted that the statute was designed to protect buyers, and it would be unfair to allow defendant/sellers to avoid sanctions simply by claiming that their own violation of the disclosure requirements invalidated all contractual obligations. Id. at 272. In this case, the unfairness may cut the other way. Nevertheless, the statue says what it says. Moreover, plaintiff tenants are not without other, independent legal remedies, as plaintiffs' dozen or so other causes of action in this case illustrate.

United States District Court
For the Northern District of California

The Court DENIES plaintiffs' motion for partial summary judgment on the issue of plaintiffs' right to terminate the lease so far as their argument rests on violations of federal statue 42 U.S.C. § 4852d.

## II.    Violations of state and local laws regulating lead hazards

Plaintiffs argue that they have established that a hazard existed on the premises in violation of San Francisco ordinance and California state law.  Plaintiffs seek summary judgment on their causes of action for nuisance, breach of the warranty of habitability, breach of contract for failure to provide habitable housing, plaintiffs' right to terminate the lease due to untenantability of premises, and negligence per se.  These remaining causes of action all hinge on whether plaintiffs can demonstrate that a lead hazard existed on the premises.

Plaintiffs argue that a lead hazard was established for purposes of both state and local law when a lead test conducted by the City and County of San Francisco revealed that the property had lead-contaminated dust in amounts 4.3 times greater than allowed under California Health and Safety Code § 17920.10 and San Francisco Health Code § 581.  The parties dispute whether the  proper definition under state law is that of a lead-contaminated dust or lead-based paint.  See Cal. Code Regs. § 35035; Cal. Health & Safety Code § 17920.10(c).  The Court finds that plaintiffs have established a lead hazard for purposes of municipal but not state law.

### A.    California Health and Safety Code § 17920.10

California Heath and Safety Code § 17920.10(a) defines lead hazards as:

> Any building or portion thereof. . . or the premises on which it is located, is deemed to be in violation of this part as to any portion that contains lead hazards. For purpose of this part, 'lead hazard' means deteriorated lead-based paint, lead-contaminated dust, lead contaminated soil, or disturbing lead-based paint without containment, if one or more of these hazards are present in one or more locations in amounts that are equal to or exceed the amounts of lead established for these terms in Chapter 8 (commencing with Section 35001) or Division 1 of the Title 17 of the California Code of Regulations or by this section and that are likely to endanger the health of the public or the occupants thereof as a result of their proximity to the public or the occupants thereof. (emphasis added)

Section 17920.10(c) adds that lead-based paint, but not lead-contaminated dust, must meet specific requirements order to qualify as a hazard. Specifically, lead-based paint:

shall be considered lead hazards as described in subdivision (a) only if the aggregate affected area is equal to or in excess of one of the following: 1) two square feet in any one interior room or space, 2)  twenty square feet on exterior surfaces, 3) ten percent of the surfaced area on the interior or exterior type of component with a small surface area.

Section (d) states:

an area smaller than stated in subdivision (c) shall be considered a lead hazard if a person is found to have a blood lead level equal to or greater than 10 micrograms per deciliter.

The statute also states that the terms "lead-based paint," "lead-contaminated dust," and "lead-contaminated soil" are to be further interpreted and clarified by the definitions in Chapter 8 (commencing with Section 35001) of Division 1 of Title 17 of the California Code of Regulations. See Cal. Health & Safety Code § 17920.10.  17 C.C.R. § 35035 defines a lead dust hazard as: "dust that contains an amount of lead equal to . . . eight hundred micrograms per square foot (800 mg/ft$^2$) for exterior floor and exterior horizontal window surfaces."

The notice to abate, which contains the results of the dust wipe test conducted by the Department of Public Health at the property, demonstrates that the appropriate definition for this case is that of lead-contaminated dust defined in § 35035.  See Pls.' Mot., Ex. F; Cal. Health & Safety Code § 17920.10; 17 C.C.R. § 35035.  The findings in the notice to abate are titled "Results of Dust Wipe Laboratory Analysis" and the notice specifically provides definitions for lead-contaminated dust.  Id.  Therefore, the Court finds plaintiffs are correct that the definition of lead-contaminated dust in § 35035 applies in this case.[6]  Therefore, the lead-contaminated dust on the patio that was 4.3 times in excess of 800 mg/ft$^2$ is in violation of the standards set out in California Health and Safety Code §17920.10.[7]  Id.

---

[6] If the definition of lead-based paint were to apply, plaintiffs have provided no evidence that the aggregate affected area meets the requirements of § 17920.10(c) or that blood lead levels equal to or greater than the amounts provided for in § 17920.10(d) were present.

[7] In support of the assertion that lead levels on the patio were 4.3 times the legal amount, plaintiff presents the notice to abate (Exhibit F), authentication of the notice, deposition testimony from Director of the Childhood Lead Prevention Program for the San Francisco Department of Health Joseph Walseth, and deposition testimony of Ihsan DuJali, Environmental Health Technician for the San Francisco Department of Health.  While defendant disputes that lead levels on the patio were 4.3 times the legal limit, defendant offers no evidence in support of this position.  Therefore, the court finds that lead-contaminated dust on the patio was present in amounts 4.3 times the legal limit.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    However, California Health and Safety Code § 17920.10(a) has two requirements for lead levels to

2    be defined as a lead hazard. First, lead-contaminated dust levels must exceed the amounts established by law.

3    Second, plaintiffs must also prove that the presence of the lead-contaminated dust is "likely to endanger the

4    health of the . . . occupants." <u>See</u> Cal. Health & Safety Code § 17920.10(a). These two requirements are

5    created by the plain language of the statute, which provides that a lead hazard exists "if one or more of these

6    hazards are present in amounts that are equal to or exceed the amounts of lead established [by statute or

7    regulations] and that are likely to endanger the health of the public or the occupants thereof as a result of their

8    proximity to the public or the occupants thereof." The legislature clearly meant to establish two separate

9    requirements through the use of the word "and." <u>See</u> Cal. Health & Safety Code § 17920.10(c) (creating a

10   limited exception to the likely to endanger the health of the public or occupants requirement for lead-based

11   paint).

12   As plaintiff has not provided any specific evidence that plaintiffs' health was at risk from the presence

13   of lead on the patio, the Court cannot find as a matter of law that lead-contaminated dust levels were likely to

14   endanger plaintiffs' health. The lead hazard was in fact abated within a few weeks of notification. In addition,

15   Joseph Walseth testified that if any health hazard had existed on the premises his department would have issued

16   a notice to vacate rather than a notice to abate. Montalvo Decl ¶ 6; Walseth Depo. 64:2-8, Ex. F. This

17   testimony supports defendant's assertion that plaintiffs' health was not in danger and raises a material dispute

18   of fact that must be resolved at trial. Therefore, the Court DENIES summary judgment on all claims that rely

19   upon violations of § 17920.10.

20

21   **B.    San Francisco Health Code § 581**

22   Section 581 of the San Francisco Health Code, which governs and defines public nuisances, defines

23   a lead-contaminated dust hazard using the state standard for milligrams of lead per square foot surface area

24   found in California Health and Safety Code § 17920.10 discussed above. Specifically, San Francisco Health

25   Code § 1603 defines "dust-lead hazard" as it is defined in California Code of Regulations § 35035: "any

26   surface dust that contains a mass per area concentration of lead equal to or exceeding 800 mg/ft$^2$ on exterior

27   windowsill and other exterior surfaces." However, San Francisco Health Code § 581 does not include the

28

United States District Court
For the Northern District of California

1   additional requirement contained in the California Health and Safety Code that lead levels must be likely to

2   endanger the health of occupants.  See Cal. Health & Safety Code § 17920.10(a).  Therefore, the lead levels

3   4.3 times the legal limit that were present at the premises are a lead hazard and a prohibited public nuisance

4   for purposes of San Francisco Health and Safety Code § 581(b)10.  See Pls.' Mot., Ex. F.  To this extent,

5   plaintiffs' motion for summary judgment on the question of violation of San Francisco Health and Safety Code

6   § 581(b) is GRANTED.

7        Where exactly this takes plaintiffs' case is unclear.  Case law under San Francisco Health Code § 581

8   and California Health & Safety Code § 17920.10 is essentially nonexistent, so there is a lack of guiding

9   precedent to determine whether a violation of a municipal public nuisance ordinance can be used to establish

10  violation of state law.  Generally, local legislation that conflicts with a provision of general state law is

11  unconstitutional. Cal Const. Art. XI § 7.  While a municipality may make additional regulations that supplement

12  state law, this power is lost when the regulations conflict with state law or if the legislature has manifested a clear

13  intent to wholly occupy a field.  See O'Connell v. City of Stockton, 128 Cal. App. 4th 831 (2005) (holding

14  that a city's general authority to regulate nuisances cannot be used as a tool to override the legislature in an area

15  in which it has already manifested an intent to occupy); Sherwin-Williams Co. v. City of Los Angeles, 4 Cal.

16  4th 893, 897 (1993).  In addition, the state has an established interest in the uniformity of building codes and

17  has provided for a narrow set of circumstances under which local governments may seek variances.  See Cal.

18  Health & Safety Code §§ 17951, 17958.5, 17958.7, 17922 (addressing uniform  housing codes and

19  regulations and citing legislative findings that the uniformity of building codes is a matter of statewide interest

20  and concern); Building Industry Assn. v. City of Livermore, 52 Cal. App. 4th 719 (1996) (holding that the state

21  legislature has clearly expressed an intent to fully occupy the field of building standards and has delineated the

22  manner in which local authorities may adopt ordinances which vary from state codes).

23        In the present case, the regulations created in California Health & Safety Code § 17920.10 fall under

24  state regulations of buildings used for human habitation and are therefore subject to an assumption of state

25  preemption.  Additionally, the content of the statute and the detail of the regulations may suggest that the state

26  has manifested an intent to occupy the area of lead hazard regulation.  Since the San Francisco lead hazard

27  ordinance differs from state law in that it lacks the requirement that the parties' heath be endangered, the issue

28

of the effect and validity of a local ordinance that differs from state law deserves further elaboration and analysis.  See Cal. Health & Safety Code §§ 17922, 17958, 17958.5, 17958.7; 17920.10; San Francisco Health Code § 581.[8]

For the reasons stated above, the Court GRANTS summary judgment on the thirteenth cause of action for nuisance so far as it establishes a violation of San Francisco Health Code § 581.  However, the Court DENIES plaintiffs' motion for summary judgment for nuisance so far as it establishes violations of state law.  Given the parties' failure to touch on the issues discussed above, the Court will permit supplemental briefing on this issue upon request.

**IV.    Remaining Causes of Action**

Plaintiffs seek summary judgment for the following causes of action: breach of the warranty of habitability (fourth cause of action),[9] failure to provide habitable housing (no specific cause of action in complaint), negligence per se (fourteenth cause of action),[10] the right to terminate lease due to untenantablity of premises (no specific cause of action in complaint), and for breach of contract for failure to provide habitable housing (first cause of action).

_____

[8] Plaintiffs cite to Beck Development Co. v. Southern Pacific Transportation Co., 44 Cal. App. 4th 1160 (1996), a case whose complexity illustrates the problems that can be created by claims similar to those found here.  Plaintiffs apparently cite Beck Development for the proposition that a nuisance per se arises "when a legislative body with appropriate jurisdiction" declares something to be a nuisance. 44 Cal. App. 4th at 1206. Beck Development, which ultimately found that there was no legislative declaration of nuisance, does not address the question of which legislative body would have "appropriate jurisdiction" to make the declaration of nuisance, or how to analyze a situation involving either differing or conflicting legislative declarations of nuisance.

[9] In order to succeed on the cause of action for violation of the warranty of habitability at trial, plaintiffs will need to demonstrate that defendant had actual or constructive notice of a lead hazard that would have been discovered by a reasonable inspection.  Plaintiffs must also address the issue of a landlord's reasonable opportunity to cure the defect, which should include whether Knight v. Hallsthammer, 29 Cal. 3d 46 (1981) applies to the present case.  Specifically, parties should address whether Knight, which held that a breach of the warranty of habitability exists even if a landlord does not have a reasonable time to repair, applies when a landlord has no specific prior notice of a defect.

[10] In their motion for summary judgment for negligence per se, plaintiffs quote California Health & Safety Code § 17920.3 as stating: "Any building. . . is deemed to be in violation . . . as to any portion that contains lead hazards."  Plaintiffs have misstated the statute, which refers only to "any nuisance" and not specifically to "lead hazard" as asserted by plaintiffs.  See Pls.' Mot. at 15.

United States District Court
For the Northern District of California

1    In order to be successful on any of these causes of action, plaintiffs must first demonstrate that

2  defendant violated California Health and Safety Code § 17920.10 or that violations of San Francisco Health

3  Code § 581 are applicable to state causes of action.  Given that the Court has denied plaintiffs' motion for

4  summary judgment on violations of § 17920.10 and found plaintiffs have failed to demonstrate the legal

5  relationship of violations of San Francisco municipal code to state law violations, the Court DENIES plaintiffs'

6  motion for partial summary judgment for the claims listed above.

7

8  **V.    Affirmative defenses**

9         **A.    Statute of limitations**

10         Defendant has alleged "statute of limitations" as a defense.  Plaintiffs filed this action in October of

11  2003, within the statute of limitations period.  The Court GRANTS plaintiffs' motion for summary judgment

12  on defendant's affirmative defense of violation of the statute of limitations.

13

14         **B.    Fifteenth, sixteenth and seventeenth affirmative defenses**

15         In these affirmative defenses, defendant argues that she is not liable because plaintiffs illegally breached

16  the lease agreement by vacating the property without providing proper notice and by failing to pay rent for the

17  period of time expressly provided for in the lease agreement.[11]  Plaintiffs argue that this defense is not valid

18  because they were not required to provide notice or to pay defendant for the remainder of the contract because

19  the lease was invalid due to violations of the implied warranty of habitability and/or 42 U.S.C. § 4852d.

20         The Court has denied summary judgment on  plaintiffs' causes of action for implied warranty of

21  habitability and 42 U.S.C. § 4852d.  Therefore, it is unclear which party breached the contract and if plaintiffs'

22  breach was justified.  As a result, there are genuine issues of material fact in dispute. Therefore, the Court

23  DENIES plaintiffs' motion for summary judgment on defendant's fifteenth, sixteenth, and seventeenth affirmative

24  defenses.

25

26         [11] Throughout their papers both parties refer to the numbered affirmative defenses incorrectly. See
    Def.'s Answer.  For affirmative defense sixteen, seventeen, and eighteen, the numbers assigned by the parties
27  are one greater than the correct affirmative defenses as provided in the answer.  What parties refer to as
    affirmative defenses twenty and twenty-one are eighteen and twenty, respectively, in the answer.  Hereafter
28  the court will refer to affirmative defenses by their correct numbers.

14

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

C.     **Eighteenth affirmative defense**

Plaintiffs' first amended complaint alleged that defendant overcharged rent. Defendant's eighteenth affirmative defense asserts that plaintiffs violated a San Francisco Rent Ordinance by failing to provide proper notice and to pay rent for the period of time expressly provided for in the lease.  Plaintiffs argue that the defense is invalid because they were not required to provide notice or to pay defendant for the remainder of the contract because the lease was invalid due to violations of  42 U.S.C. § 4852d.  The Court has denied summary judgment on violations of 42 U.S.C. § 4852d.  Therefore, it remains unclear which party breached the contract and if plaintiffs' breach was justified.  As there are genuine issues of material fact in dispute, the Court DENIES plaintiffs' motion for summary judgment on defendant's eighteenth affirmative defense.

D.     **Twentieth affirmative defense**

Plaintiffs seek summary judgment on defendant's affirmative defense that plaintiffs consented to enter into a contract with defendant knowing that there was a possibility that lead was on the premises.  Consent is not a defense to violations of federal or state laws governing lead disclosure or tenable housing, and any agreement by a lessee to waive his or her right to tenable housing is void as contrary to public policy.  See Cal. Health & Safety Code  §17920; Cal. Civ. Code § 1942.1; 42 U.S.C. § 4852d.  Defendant may not avoid liability by arguing that plaintiffs' consented to live in premises that are deemed unsafe or hazardous as a matter of law.  Therefore, the Court GRANTS plaintiffs' motion for summary judgment on defendant's twentieth affirmative defense of consent.

E.     **Slander per se**

Plaintiffs move for summary judgment on defendant's counterclaim for slander per se.   Defendant alleged in her counter-claim that plaintiffs slandered her by falsely and publically accusing her of, among other things, knowingly and/or intentionally renting a toxic waste dump.  Parisot Decl. at ¶26.  Plaintiffs present evidence that the statements in question cannot be attributed to plaintiffs and deny that Caldwell ever used the term "toxic waste dump."  Parisot Decl. at ¶ 29.   Defendant presents no evidence or argument in opposition to this motion.  Therefore, the Court GRANTS plaintiffs' motion for summary judgment on defendant's

1    counter-claim of slander per se.

2

3    **VI.      Summary**

4              At the end of the hearing on July 29, 2005, defendant requested assignment to mediation. Plaintiffs'

5    counsel did not believe mediation would be productive and suggested that the costs of attorneys' fees were

6    likely to overtake the amount of damages at stake.  However, the procedural posture and complexity of

7    plaintiffs' pleading suggests that concerns over attorneys' fees will only be exacerbated as the case proceeds.

8    Given the relatively small amount of money at stake, a resolution obtained without further litigation is in the best

9    interest of both parties.  This Court will refer the parties to court-sponsored mediation, to occur within the next

10   30 days.  The current September 12, 2005 trial date is VACATED and will be re-set promptly as necessary.

11             Should the parties be unable to resolve the dispute voluntarily, it will be necessary to determine more

12   clearly what claims plaintiffs are bringing and what the relationship between the city and state regulations should

13   properly be.  This will require further briefing on these questions of first impression.

14

15                                            **CONCLUSION**

16             For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion

17   for summary judgement with respect to plaintiffs' thirteenth cause of action (city nuisance), defendant's third

18   affirmative defense (statute of limitations), defendant's twentieth affirmative defense (consent), and defendant's

19   counter-claim for slander per se.  The Court  DENIES plaintiffs' motion with respect to all other claims and

20   affirmative defenses.[12]  Finally, the Court orders the parties to court-sponsored mediation and VACATES the

21   September 12, 2005 trial date.

22

23             **IT IS SO ORDERED.**

24

25   Dated: August 22, 2005

26

27   _____

28        [12] However, the Court's denial of summary judgment on plaintiffs' nuisance claim based on state law
     is subject to reconsideration if the parties submit supplemental briefing as previously discussed.

                                                  16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____
SUSAN ILLSTON
United States District Judge